**Duane WITHEY and Ethel Siplin, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**Cesar PERALES, individually and as Commissioner of the New York State Department of Social Services, and W. Michael Woodhouse, as Commissioner of the Livingston County Department of Social Services,**

**and**

**W. Burton Richardson, as Director of the Monroe County Department of Social Services and LOUIS W. SULLIVAN, M.D. as Secretary of Health and Human Services,[1] Defendants.**

No. Civ. 86–1122L.

United States District Court,
W.D. New York.

Jan. 25, 1990.

Martha A. Roberts, Bryan D. Hetherington, Geneva, N.Y., for plaintiffs.

Elizabeth J. McDonald, Asst. Atty. Gen., Ann VanGraafeiland, Asst. U.S. Atty., Rochester, N.Y., for defendants.

## DECISION AND ORDER

LARIMER, District Judge.

### INTRODUCTION

This action, brought by recipients of Aid to Families with Dependent Children ("AFDC")[2], challenges a federal regulation

---

1. Louis W. Sullivan succeeded Otis R. Bowen as Secretary of Health and Human Services and, therefore, he should be substituted as defendant. Fed.R.Civ.P. 25(d)(1).

2. By stipulation and order filed April 10, 1989, this action was certified as a class action on behalf of the following class:

All applicants for or recipients of Aid to Families with Dependent Children (AFDC) benefits in New York who request a fair hearing in an untimely manner, as presently defined by 45 CFR 205.10(a)(5)(iii) and Social Services Law § 22(4), and who since April 1, 1988 claim to have been underpaid or have been identified by local, state or federal social services officials to have been underpaid AFDC benefits.

and New York statute which together impose a procedural limitation on recipients seeking to challenge alleged AFDC underpayments. The statute and regulation create a statute of limitations requiring recipients who allege that they have received insufficient AFDC benefits to request a fair hearing before the responsible state agency within 60 days. Before me are the parties' cross motions for summary judgment.

## FACTS

The parties in this case do not dispute the material facts, nor do these facts require lengthy discussion. The named plaintiffs, Duane Withey and Ethel Siplin, were both recipients of AFDC benefits in 1985 and 1986 respectively. The defendant County Departments of Social Services each determined to reduce or eliminate the recipients' benefits, in plaintiff Withey's case because his earned income rendered him ineligible and in plaintiff Siplin's case to correct an alleged overpayment and to reflect her earned income. Both plaintiffs requested fair hearings to contest these benefit reductions, but both did so more than 60 days after the actions of which they complained.

Consequently, the Departments of Social Services ruled against plaintiffs on the ground that plaintiffs' hearing requests were time-barred, having failed to comply with New York Social Services Law § 22(4), which requires that "[a]ny appeal pursuant to this section must be requested within sixty days after the date of the action or failure to act complained of."

## DISCUSSION

A. Statutes, Regulations and the Parties' Contentions

The regulations promulgated by the Secretary of Health and Human Services specifically authorize the enactment of Social Services Law § 22(4). 45 C.F.R.

§ 205.10(a)(5)(iii) provides that a claimant wishing to appeal state agency action "shall be provided reasonable time, not to exceed 90 days, in which to appeal an agency action."

Plaintiffs argue that this regulation, and hence the statute enacted thereunder, contravenes the language of 42 U.S.C. § 602(a)(22), which requires that "[a] State plan for aid and services to needy families with children must ... provide that the State agency will promptly take *all necessary steps to correct any overpayment or underpayment* of aid under the State plan" (emphasis added). This language was added to the Social Security Act by the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub.L. 97–35.

Plaintiff, relying principally on the Second Circuit's opinion in *Tambe v. Bowen*, 839 F.2d 108, 110 (2d Cir.1988), *aff'g* 662 F.Supp. 939 (W.D.N.Y.1987), claims that the limitation period set out by state statute violates 42 U.S.C. § 602(a)(22). In plaintiff's view, in light of *Tambe*, § 602(a)(22) provides for correction of underpayments at any time.[3]

As additional support of their argument, plaintiffs point to OBRA's legislative history, as reviewed by the Court of Appeals for the Ninth Circuit in *Edwards*, which plaintiffs argue evinces Congress' intent to ensure correction of all underpayments *and* overpayments identically. Plaintiffs contend that because the statute of limitations does not restrict the time within which the government may act to correct overpayments, but bars only claimants seeking to correct underpayments, it treats underpayments differently from overpayments and thus violates Congressional intent.

Defendants argue in response that the plain language of § 602(a)(22) does not preclude states from applying statutes of limitations to requests for fair hearings to contest underpayments. Defendants reason that the limitations period restricts the

**3.** Plaintiffs cite additional language from the Second Circuit's opinion:

'All' means every. 'Any' means without restriction or limitation. The plain meaning of the statute could not be broader. *Congress*

*intended all underpayments to be corrected.* (plaintiffs' emphasis)

839 F.2d at 110, quoting *Edwards v. McMahon*, 834 F.2d 796, 799 (9th Cir.1987).

time within which to seek a determination as to whether an underpayment even exists, and hence does not frustrate Congress' mandate that all *existing* underpayments be corrected. Furthermore, argue defendants, under the test of *Chevron, U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), the Secretary's rational interpretation of the federal statute is entitled to deference, since the plain language of § 602(a)(22) does not speak directly to this issue.

## B. Analysis

The test under *Chevron,* as mentioned above, is clear. The Court held:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for this court ... must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue ... the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 842–43, 104 S.Ct. at 2781–82. (footnotes omitted).

Thus, my first task is to determine whether in § 602(a)(22), Congress addressed precisely whether a state may impose a statute of limitations on claimants' requests for fair hearings to contest alleged underpayments. I find that it did not. The plain language of this section makes no express mention of statutes of limitations, but merely directs that the states provide a mechanism for correcting underpayments. Moreover, as defendants point out, New York Social Services Law § 22(4) limits the time within which a recipient has to request a fair hearing, *at which it will be determined whether an underpayment exists.* Not until such a determination has been made does the obligation created by Congress, to correct the under-

payment, attach. *See Strack v. Perales,* 151 A.D.2d 903, 542 N.Y.S.2d 876 (App.Div. 3d Dep't 1989).

The *Tambe* case does not aid plaintiffs' position. That case did not involve a statute of limitations, nor did the court anywhere imply that a statute of limitations such as that challenged here would be improper. The court in *Tambe* invalidated state and federal regulations that provided for correction of underpayments to current, but not former AFDC recipients. In its decision, the court relied on the "all necessary steps" and "any underpayment" language of § 602(a)(22) cited here by plaintiffs, and found that the plain language of this section demonstrated Congress' intent to provide for the correction of all underpayments, regardless of the claimants' current eligibility for aid. *Tambe* is distinguishable from the instant case, however, because it clearly involved regulations affecting states' obligations to correct "admitted" underpayments, i.e., those already determined to exist. *See Tambe v. Bowen,* 662 F.Supp 939, 940 (W.D.N.Y.1987), *aff'd* 839 F.2d 108 (2d Cir.1988).

Likewise, the Ninth Circuit's decision in *Edwards,* relied on by the Court in *Tambe,* is wholly inapposite to this case. The holding in *Edwards* essentially is equivalent to that in *Tambe, i.e.,* that the Secretary's regulation limiting the correction of underpayments to present AFDC recipients is invalid under OBRA. Like the *Tambe* case, *Edwards* did not involve a statute of limitations challenge. The Court in that case, therefore, made no finding whatsoever that Congress, in enacting OBRA had spoken directly to the statute of limitations issue.

Thus, I find that Congress has not spoken directly to the issue of a statute of limitations for fair hearing requests. Turning then to the next step of the *Chevron* analysis, the court must assess the rationality of the Secretary's interpretation of the Social Security Act.

Plaintiffs argue that it is simply unfair, and contrary to the Ninth Circuit's decision in *Edwards,* to impose no time restrictions on the government's ability to correct over-

payments while forcing recipients alleging underpayment to comply with a strict 60–day limitations period. Plaintiffs point to the Ninth Circuit's review of OBRA's legislative history, and the Court's conclusion that Congress intended that both overpayments and underpayments be treated identically. The "fairness" of this regulation is not an issue that is before the court; since Congress has not specifically spoken to the statute of limitations issue, the Secretary's interpretation must stand if it is *reasonable. See Chevron,* 467 U.S. at 845, 104 S.Ct. at 2783; *see also Young v. Community Nutrition Institute,* 476 U.S. 974, 981, 106 S.Ct. 2360, 2364, 90 L.Ed.2d 959 (1986). The fairness argument is one best addressed to Congress, which is in a superior position to make policy decisions such as this.

That the challenged regulation is rational is evident from its consistency with the stated objectives of OBRA. In enacting OBRA, Congress sought, *inter alia,* to reduce federal expenditures and to ensure administrative accuracy. *See Edwards,* 834 F.2d at 801 (reviewing legislative history). A statute of limitations naturally results in decreased expenditures both because it reduces the number of claims brought, by weeding out those that are time-barred, and because it lessens the fiscal burden of maintaining administrative records indefinitely. Moreover, administrative accuracy is improved by the elimination of stale claims.

Further evidence of the rationality of the Secretary's interpretation of the statute is the abundance of statutes of limitations as procedural prerequisites in most areas of the law. In her brief, the Secretary points to many cases decided by the Supreme Court in which application of a statute of limitations to bar consideration of the merits of a claim has been upheld. *See Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). Likewise, reference is made to numerous administrative regulations imposing statutes of limitations, of similar length to the instant one, on recipients of government assistance who wish to contest administratively denial or reduction in their benefits. *See, e.g.,* 7 C.F.R. § 273.15(g) (90 days to contest adverse agency action involving food stamp program); 20 C.F.R. §§ 404.933(b) and 416.1433(b) (60 days to contest adverse determination regarding Social Security or SSI benefits).

As the Supreme Court has recognized, statutes of limitations are not mere technicalities, but rather serve an important purpose in maintaining a well-ordered justice system. *See Board of Regents v. Tomanio, supra,* 446 U.S. at 487, 100 S.Ct. at 1796. As the Court announced in *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979), statutes of limitations,

> although affording plaintiffs what the legislature deems a reasonable time to present their claims ... protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.

Legislatures often determine that "the right to be free from stale claims in time comes to prevail over the right to prosecute them." *Id.,* quoting *Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944).

Finally, I address plaintiff's argument that because the regulation at issue was promulgated prior to enactment of § 602(a)(22), it is entitled to less deference than it would be if it has been issued contemporaneously with the statute. Although administrative interpretations of statutes are accorded the greatest deference when promulgated contemporaneously with the enactment of the law, the fact that the Secretary issued the regulation at issue several years before Congress created OBRA does not diminish the deference due to the Secretary's interpretation in this case. The reason for this is that the regulation obviously has stood the test of time, having been on the books for approximately 15 years, lasting beyond the enactment

of OBRA, and has never been eliminated by Congress. "[C]ongressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." *Young v. Community Nutrition Institute*, 476 U.S. 974, 983, 106 S.Ct. 2360, 2366, 90 L.Ed.2d 959 (1986), quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974). *See also Rastelli v. Warden, Metropolitan Correctional Center*, 782 F.2d 17, 24 (2d Cir.1986) ("[c]ongress' failure to condemn an existing regulation provides an inference that it acquiesced in the regulation.")

For the reasons set forth above, I find that the regulation challenged here by plaintiffs is a permissible, reasonable interpretation by the Secretary of Congress' intent in passing § 602(a)(22). I decline, therefore, to substitute my judgment for the Secretary's, and accordingly must deny plaintiffs' motion for summary judgment and grant judgment in favor of defendants.

## CONCLUSION

Plaintiffs' motion for summary judgment is denied. Defendants' motions for summary judgment are granted.

IT IS SO ORDERED.