Sharon MOORE and Jimmie Moore, Johnny Jefferson, individually on behalf of all persons similarly situated, Plaintiffs,

v.

Jeffrey MILLER, Director of the Illinois Department of Public Aid, and the Illinois Department of Public Aid, Defendants.

No. 81 C 7265.

United States District Court, N.D. Illinois, E.D.

June 28, 1985.

Thomas Grippando, Dorie Budlow, Cook County Legal Assistance Foundation, Chicago, Ill., for plaintiffs.

Neil F. Hartigan, Atty. Gen. for State of Ill., for defendants; Steven Hogroian, Owen M. Field, of counsel.

## MEMORANDUM AND ORDER

MORAN, District Judge.

In *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the Supreme Court approved a district court order requiring notice be sent to class members informing them of state administrative avenues available for retrospective monetary relief if the members were improperly denied benefits. The Court found the notice to be "ancillary" to the prospective relief already ordered by the district court and allowed by *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Plaintiffs in the present case seek notice relief even though this court's injunction regarding the handling of benefit payments has been rendered a nullity by a change in federal law. The Sixth Circuit has held such notice relief unavailable. *See Banas v. Dempsey*, 742 F.2d 277 (6th Cir.1984), *cert. granted sub nom Green v. Mansour*, — U.S. —, 105 S.Ct. 1863, 85 L.Ed.2d 158 (1985). The *Banas* court found that notice relief was required to attach to some prospective injunctive relief and because none existed notice relief would not be allowed. This court disagrees and grants the notice relief requested.

## I. HISTORY

Plaintiff filed this class action complaint in December 1981, attacking the Illinois Department of Public Aid's method of determining income levels with regard to receipt of earned income credits. In December 1983 this court granted plaintiff's motion for a preliminary injunction. *See Moore v. Miller*, 579 F.Supp. 1188 (N.D.Ill. 1983).[1] The court held that IDPA had to have a reasonable certainty of EIC eligibility before deducting expected receipt of EIC payments from a recipient's income in the calculation of AFDC benefits and could not rest upon assumptions. Effective October 1, 1984, the Deficit Reduction Act of 1984, Public Law No. 98–369, § 2629, changed the federal statute to allow crediting a recipient's income with an EIC payment only if an EIC payment is actually received. *See* 42 U.S.C. § 602(d)(1) (1985). This standard is in accord with the IDPA's practice after this court's grant of a preliminary injunction and this court's order of May 4, 1984.

Now before the court is plaintiffs' motion for summary judgment, seeking declaratory and notice relief as well as permanent injunctive relief. Defendants move to dismiss and for summary judgment. Defendants also move to dissolve the preliminary injunction issued by this court in 1983. In addition, plaintiffs' motion for class certification still remains from its filing at the inception of this action.

## II. INJUNCTION

Plaintiffs move for a permanent injunction regulating the crediting of EIC payments to AFDC recipient's incomes. At the same time defendants move to dissolve the present preliminary injunction. Due to the change in the law, and without any indication that defendants interpret that law differently than espoused in their briefs, the court would be disposed to dissolve the injunction but for an uncertainty respecting reimbursement of persons who had ceased being recipients between December 1983 and March 1984, when IDPA changed its policy and thereafter reimbursed those entitled who were still recipients. Dissolution of an injunction is warranted after a "showing of changed circum-

---

1. A more detailed history of this case is included in that memorandum and order.

stances so that continuance of the injunction is no longer justified and/or because it will work oppressively against the enjoined parties." *American Optical Co. v. Rayex Corp.*, 291 F.Supp. 502, 510 (S.D.N.Y.1967), *aff'd* 394 F.2d 155 (2d Cir.), *cert. denied* 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968). The changed law is just such an occurrence. Defendants' position before the issuance of the preliminary injunction was reasonable, though found by this court to be erroneous. To maintain that position in face of a changed law would not be reasonable. The court finds the purpose of the preliminary injunction has been largely fulfilled, the complained-of conduct has been discontinued, and such conduct is unlikely to recur. *See Burgoyne v. Lukhard,* 410 F.Supp. 477 (E.D.Va.1976). No gain can come by continued supervision by this court, except for resolution of the one outstanding matter. Accordingly, the preliminary injunction regulating defendants' crediting of EIC payment in the calculation of a recipient's income is continued only for the limited purpose indicated.

### III. CLASS ACTION

With the preliminary injunction largely dissolved, it is now appropriate to determine the motion for class certification before proceeding further. Defendants raise two arguments against certification. First, they claim that plaintiff Sharon Moore is not qualified to represent the class due to financial information gleaned during discovery. This attack may well be justified, but plaintiff Jefferson is still capable of representing the class and thus certification can occur. Defendants' second argument is stronger. They claim that because prospective injunctive relief is no longer sought, plaintiffs' claims are moot and class certification is not warranted.

Judge Marshall, in *Simpson v. Miller,* 93 F.R.D. 540 (N.D.Ill.1982), dealt with the identical issue facing this court. In *Simpson,* plaintiffs, complaining of erroneous calculations of income for AFDC purposes, sought class certification and notice relief after a change in federal law made any claim for prospective injunctive relief moot. Judge Marshall, in analyzing defendants' claim of mootness, applied the two-part test enunciated in *United States Parole Commission v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980). First, he found that plaintiff had a live interest in the outcome of the litigation because they continued to be denied the full extent of the benefits they did not receive due to the IDPA's failures. *See Simpson v. Miller,* 93 F.R.D. at 543. Plaintiffs still claim a present need for notice relief. Second, he found plaintiffs had a personal stake in the claim for notice relief. He made this finding because the purpose of the personal stake requirement, to ensure an adversarial presentation of concrete issues, remained satisfied by plaintiffs' request for notice relief. *Id.* at 545.

■ This court finds Judge Marshall's analysis in *Simpson* fully applicable to the present action, and notes that the *Banas* court followed a similar analysis. Plaintiffs in this case do continue to have a live controversy. They complain of shortfalls in their past AFDC payments. These shortfalls have not yet been remedied. They seek notice relief informing them of their administrative remedies. In addition, both plaintiffs and the IDPA are vigorously trying this action with the stakes heavy for both sides. The court finds plaintiffs' claims for notice relief not to be moot.[2]

■ The court now turns to Rule 23 considerations for certification of the class. The court finds the four enunciated requirements for Rule 23(c) to be satisfied. This class is much too large to allow joinder. The defendant reimbursed 11,000 recipient families for shortfalls falling between the issuance of the preliminary injunction and the state's change in their policy. It is expected that more can prop-

---

**2.** As in *Simpson,* certification is occurring here after the change in the law. This court, in agreement with Judge Marshall, sees no moot- ness problem arising because of that timing. *See Simpson v. Miller,* 93 F.R.D. at 545 (1982).

erly seek notice relief over the four-year period contested. Common questions of law and fact concerning the state's policy regarding EIC payments exist at the crux of this case. Typicality, at least as far as the relief that can be awarded by this court, exists. Finally, the court finds that plaintiff Jefferson, and the attorneys handling this action, have fairly and adequately protected the interests of the class.

■ In the present case the IDPA has acted "on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(2). Thus, a Rule 23(b)(2) class is appropriate. Because the present action satisfies the requirements of Rule 23, and the case is not moot, this court grants plaintiffs' motion for class certification.

## IV. DECLARATORY RELIEF

■ Plaintiffs seek declaratory relief against defendants. Such relief, as long as directed against state officials and not the state itself, is permissible within the constraints of the Eleventh Amendment. *See* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3225 at 194 (2d Ed.1984). Plaintiffs seek a declaration that between October 1, 1981 and October 1, 1984 defendants were required to calculate EIC payments in accordance with the standards set out in this court's previous memorandum.

Having reviewed its previous memorandum and order, this court agrees with its earlier conclusion. Buttressing the findings in that memorandum and order is an AFDC action transmittal, # SSA–AT–84–7, dated April 24, 1984. That transmittal requires calculations consistent with this court's ruling and inconsistent with defendants' practice before this court's ruling. The court grants defendants' motion for declaratory judgment.

The purpose of this declaratory action is to ensure proper adjudication of requests for reimbursement filed through state administrative procedures. Under the federal statutes states are required to correct any underpayment of aid. *See* 42 U.S.C. § 602(a)(22) (1985). The amount of underpayment is calculated following regulations extant at the time of the underpayment. *See* 45 C.F.R. § 233.20(a)(13)(ii) (1982). The declaratory relief would ensure that any administrative determinations of past underpayments would be adjudicated in conformity with this court's earlier findings.

## V. NOTICE RELIEF

Finally, having largely dissolved the injunction and granted declaratory relief, the court now turns to the remaining issue: notice relief. Plaintiffs seek court ordered notice informing class members that they may have been underpaid due to the IDPA's policies and informing them of the state administrative remedies. The court in *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), found such notice relief in a similar situation appropriate when it was "ancillary to the prospective relief already ordered by the court." *Id.* at 349, 99 S.Ct. at 1149.

The Sixth Circuit, in *Banas,* 742 F.2d 277, relied on this "ancillary" language in denying notice relief. The *Banas* court found that notice relief was not by itself within the contours of relief allowed by *Ex Parte Young.* It noted the fiction of *Young,* that prospective injunctive relief was not an action against the state but instead an action requiring state officials to comply with federal law, and then interpreted *Quern's* "ancillary" language to be some sort of tacking-on of notice relief to the *Young* relief, as in the concept of ancillary jurisdiction. When further prospective relief is no longer required, the court found there is nothing to which to tack on notice relief and thus such relief runs afoul of the eleventh amendment.

Because it is the fiction of *Young* that shelters such ancillary orders from not being orders against the state, when the basis of that fiction—the need for injunctive relief to force state officials to com-

ply with federal law—disappears, so does the shelter.

742 F.2d at 288. In this district, Judge Grady has explicitly followed the reasoning of the *Banas* court. In *Dandridge v. Coler*, No. 84 C 930 (N.D.Ill. Jan. 25, 1985), the court found that plaintiff's request for notice relief was not allowed because not "ancillary to something more than a declaratory judgment governing past official conduct," and thus found no valid claim for relief. *See id.*, slip at 6. *See also Colbeth v. Wilson*, 554 F.Supp. 539, 546 (D.Vt. 1982), *aff'd sub nom. Colbeth v. O'Rourke*, 707 F.2d 57 (2d Cir.1983).

This court is somewhat puzzled by the above cases. The argument constructed by the *Banas* court, and accepted in *Dandridge*, is theoretically consistent with *Ex Parte Young*, and a defensible interpretation of certain language in *Quern*, but is inconsistent with results actually achieved in that litigation. The history of the *Quern* litigation, filed in this district, is crucial to the present determination. The action was filed because of failures of the IDPA to promptly commence Aid to the Aged, Blind and Disabled (AABD) payments to eligible recipients. The district court granted both injunctive and retroactive damage relief to plaintiffs. In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court found the retroactive damage relief to be violative of the Eleventh Amendment. Significantly, however, by the time the *Edelman* decision was rendered, the AABD program was no longer in operation. *See id.* at 653 n. 2, 94 S.Ct. at 1351 n. 2. It had been replaced by the federally funded and administered supplemental security income program. *Quern v. Jordan*, 440 U.S. at 348 n. 20, 99 S.Ct. at 1149 n. 20. The case thus went back to the district court in a posture where any prospective relief was mooted by the dissolution of the program and thus no prospective injunctive relief existed. The court ordered notice relief and, after modification by the Seventh Circuit, this grant of notice relief was affirmed by the Supreme Court in *Quern*. Thus, the Court in *Quern* allowed notice relief even though there really wasn't any ongoing prospective injunctive relief to which to attach the notice relief.

This necessarily brings into question the Sixth Circuit's interpretation of the term "ancillary" used in *Quern*. The most common legal use of "ancillary," and the one followed by the Sixth Circuit in *Banas*, is in the realm of subject matter jurisdiction, where one claim, for which no subject matter jurisdiction exists, for reasons of convenience and fairness, is attached onto a claim properly before the court. *See e.g. Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). This usage, on its face, does not seem applicable to eleventh amendment cases because jurisdictional tacking-on allowed by the concept of ancillary jurisdiction for fairness and convenience seems no basis for allowing federal court adjudication of a claim otherwise not allowed by a specific amendment to the Constitution. In Eleventh Amendment cases, however, the term "ancillary" has taken on additional legal meaning. In *Edelman*, the court held that retrospective damage awards were not allowed because they came directly from a state's treasury, but it allowed prospective injunctions, even though such injunctions inevitably cost the state money. These inevitable costs were found to be a permissible and often inevitable "ancillary effect on the state treasury." *Edelman*, 415 U.S. at 668, 94 S.Ct. at 1358. In *Quern* itself, the court noted, in its only other use of the word "ancillary," that prospective injunctions may have "an ancillary effect on the state treasury." *Quern v. Jordan*, 440 U.S. at 337, 99 S.Ct. at 1143. In these usages, "ancillary" seems to refer to inevitable and permissible costs.

■ Two factors convince this court that notice relief is itself prospective relief and that "ancillary" in that context means "an inevitable and permissible cost" which is an acceptable part of the prospective relief. First, as stated previously, such is the prior usage of the word in Eleventh Amendment cases and in the *Quern* case. *See Quern*

v. Jordan, 440 U.S. at 337, 99 S.Ct. at 1143; Edelman v. Jordan, 415 U.S. at 667, 94 S.Ct. at 1357. The Quern decision, in a short substantive discussion of the notice issue, found that notice relief "falls on the Ex Parte Young side of the eleventh amendment line rather than on the Edelman side" because the claim of causation between the notice relief ordered and the payment of retrospective damages had many "missing links." Quern, 440 U.S. at 347, 99 S.Ct. at 1148. Notice relief does not itself entail a federal direction of reimbursement. Rather, it advises possible claimants of a possible state administrative procedure by which claims can possibly be filed and paid. It looks toward future action by claimants and the state. Similarly, the citation to the portion of Milliken v. Bradley, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) which discusses the prospective nature of programs designed to "bring about the delayed benefits of a unitary system," 433 U.S. 267 at 290, 97 S.Ct. at 2762, seems to emphasize the court's finding that notice relief is itself prospective in nature, even though designed to facilitate the payment of past shortfalls and thus be acceptable under the Eleventh Amendment even without a pending prospective injunction.

Second, and most significant, is the allowance of notice relief in Quern, even though there was no effective ongoing injunction. This court is wary of placing too much emphasis on one word in a Supreme Court opinion, but it is on that word that the Banas court rested its decision. This court disagrees with the interpretation in Banas. That disagreement can perhaps be underscored by the application of the Banas court's reasoning to the facts in this case. The preliminary injunction here was entered in December 1983 (and it has not been entirely dissolved, although this court does not rest on that fact). In May 1984 the state changed its policy so as to go beyond what this court believed in December to be its federal obligations. That

change was identical to the obligations created by federal law in October 1984. IDPA contends that injunctive relief was no longer necessary after May 1984. If there had been no change in the federal statute the Department would be advancing the same contention that it advances now, the bar of the Eleventh Amendment, on the basis of the Banas court reasoning. Notice relief would then depend upon whether a court did or did not believe that a continuation of injunctive relief was appropriate. This court does not believe that the application of the Eleventh Amendment with respect to notice relief should or does turn upon a discretionary judgment concerning the continuation of equitable relief. In the fictional world relating the Eleventh Amendment to remedies for official misconduct or error, that concept adds but another and unwarranted uncertainty.

In Quern, this court believes, the Supreme Court held that notice relief is permissible prospective relief without regard to an injunctive order and even though it has an ancillary impact upon a state treasury. In light of such an interpretation, notice relief is warranted here.[3]

## CONCLUSION

The change in federal law has largely negated the need for continuing prospective relief but it has not negated the reasons for continuing this suit. Pursuant to the reasoning in this Memorandum and Order, the court finds the following relief appropriate:

(1) The preliminary injunction is dissolved, except to the extent stated herein;

(2) Plaintiffs' motion for class certification is granted;

(3) Plaintiffs' motion for declaratory relief is granted; and

(4) Plaintiffs' motion for notice relief is granted.

---

**3.** For a more detailed application of this issue, reaching the same result, see Burnham, Retroactive Welfare Benefits: Federal Class Actions after Edelman v. Jordan, 18 Clearinghouse Review 225 (July 1984).

The parties are instructed to submit proposed notice forms within fifteen days to this court.