839 F.2d 108
 56 USLW 2479
 Ronald and Linda TAMBE, Individually and on behalf of all
others similarly situated, Appellees.
v.
Otis R. BOWEN, as Secretary of the United States Department
of Health and Human Services, Cesar Perales, as Commissioner
of the New York State Department of Social Services, and W.
Burton Richardson, as Director of the Monroe County
Department of Social Services, Defendants,
Otis R. BOWEN, as Secretary of the United States Department
of Health and Human Services, Cesar Perales, as
Commissioner of the New York State
Department of Social Services,
Appellants.
 Nos. 600, 601, Dockets 87-6212, 87-6214.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 22, 1988.
Decided Feb. 12, 1988.
 
 Al J. Daniel, Jr., Washington, D.C. (Richard K. Willard, Asst. Atty. Gen., and William Kanter, Washington, D.C.; Roger P. Williams, U.S. Atty., Buffalo, N.Y., on the brief), for appellant Bowen.
 Alan W. Rubenstein, Asst. Atty. Gen., Albany, N.Y. (Robert Abrams, Atty. Gen., Peter H. Schiff, Deputy Sol. Gen., and William J. Kogan, Asst. Sol. Gen., Albany, N.Y., on the brief), for appellant Com'r of New York State Dept. of Social Services.
 Bryan D. Hetherington, Rochester, N.Y. (Edwin J. Lopez-Soto, and Leanna H. Gipson, Rochester, N.Y., on the brief), for appellees.
 Before TIMBERS, KEARSE and PIERCE, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 Appellants Otis R. Bowen, Secretary of Health & Human Services, and Cesar Perales, Commissioner of the New York State Department of Social Services ("appellants"), appeal from a judgment entered June 23, 1987 in the Western District of New York, Michael A. Telesca, District Judge, 662 F.Supp. 939, granting the cross-motion for summary judgment of appellees Ronald and Linda Tambe ("appellees"); granting appellees' motion for class certification; and denying appellants' cross-motion for summary judgment.
 
 
 2
 We affirm.
 
 
 3
 In April 1984, appellee Ronald Tambe ("Tambe") decided to move back into the household of his wife and their five year old son. Linda Tambe and her son had been receiving public assistance under the Aid to Families with Dependent Children ("AFDC") program. Tambe, who was unemployed at the time he moved back, applied to be added to his wife's public assistance grant. The Monroe County Department of Social Services denied Tambe's application on the ground that Tambe allegedly had failed to register with the New York Employment Services Division.
 
 
 4
 Tambe requested a "fair hearing" to contest the denial of benefits. After it had been rescheduled several times, the hearing was held on October 30, 1984. By this time, Tambe had found work and the family no longer was receiving public assistance benefits.
 
 
 5
 On March 13, 1985, the New York State Department of Social Services rendered its fair hearing decision. The decision stated that the denial of Tambe's request to be added to his wife's public assistance grant was incorrect because Tambe had shown that he in fact had registered with the Employment Services Division. Nonetheless, the agency declined to grant Tambe the relief requested on the ground that Tambe no longer was a recipient of public assistance benefits.
 
 
 6
 The agency denied relief on this ground because certain federal and state regulations provided that underpayments would be corrected only when the person requesting benefits was a current recipient of public assistance. See 45 C.F.R. Sec. 233.20(a)(13)(ii) (1982); 18 NYCRR Sec. 352.31(f) (1983). The agency informed Tambe that he would not receive benefits unless he again became a recipient of public assistance.
 
 
 7
 On April 24, 1985, Ronald and Linda Tambe commenced the instant action individually and on the behalf of all those similarly situated. They named as defendants appellants and W. Burton Richardson, Director of the Monroe County Department of Social Services. The Tambes asserted that the regulations that had barred relief violated the Omnibus Budget and Reconciliation Act ("OBRA"), 42 U.S.C. Sec. 602(a)(22) (Supp. III 1985), and the Fourteenth Amendment. The parties filed cross-motions for summary judgment. On June 23, 1987, the district court certified the class and granted the Tambes' motion for summary judgment while denying appellants' motion for summary judgment. The court held that the regulations did violate OBRA. 662 F.Supp. 939, 941-42 (W.D.N.Y.1987).
 
 OBRA provides in pertinent part:
 
 8
 "A State plan for aid and services to needy families with children must--
 
 
 9
 * * *
 
 
 10
 (22) provide that the State agency will promptly take all necessary steps to correct any overpayment or underpayment of aid under the State Plan and, in the case of--
 
 
 11
 (A) an overpayment to an individual who is a current recipient of such aid (including a current recipient whose overpayment occurred during a prior period of eligibility), recovery will be made by repayment by the individual or by reducing the amount of any future aid payable to the family of which he is a member, except that such recovery shall not result in the reduction of aid payable for any month, such that the aid, when added to such family's liquid resources and to its income (without application of paragraph (8)), is less than 90 percent of the amount payable under the State plan to a family of the same composition with no other income (and, in the case of an individual to whom no payment is made for a month solely by reason of recovery of an overpayment, such individual shall be deemed to be a recipient of aid for such month);
 
 
 12
 (B) an overpayment to any individual who is no longer receiving aid under the plan, recovery shall be made by appropriate action under State law against the income or resources of the individual or the family; and
 
 
 13
 (C) an underpayment, the corrective payment shall be disregarded in determining the income of the family, and shall be disregarded in determining its resources in the month the corrective payment is made and in the following month;
 
 
 14
 except that no recovery need be attempted or carried out under subparagraph (B) in any case, other than a case involving fraud on the part of the recipient, where (as determined by the State agency in accordance with criteria for determining cost-effectiveness, and with dollar limitations, which shall be prescribed by the Secretary in regulations) the cost of recovery would equal or exceed the amount of the overpayment involved."
 
 
 15
 42 U.S.C. Sec. 602(a)(22) (Supp. III 1985).
 
 
 16
 The challenged federal regulation, which was promulgated in response to the enactment of OBRA, provides in pertinent part that the state must:
 
 
 17
 "(ii) Specify uniform Statewide policies for prompt correction of any underpayments to current recipients and those who would be a current recipient if the error causing the underpayment had not occurred."
 
 
 18
 45 C.F.R. Sec. 233.20(a)(13)(ii) (1982) (emphasis added). Similarly, the challenged state regulation provides in pertinent part:
 
 
 19
 "Local social services districts shall correct any underpayments to current recipients, and to those who would be current recipients if the error causing the underpayment had not occurred...."
 
 
 20
 18 NYCRR Sec. 352.31(f) (1983) (emphasis added).
 
 
 21
 The question presented here is whether the two regulations just quoted conflict with OBRA. We hold that they do conflict and that they must yield to the federal statute.
 
 
 22
 In Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, (1984), the Supreme Court described the procedure a court must follow in evaluating an agency's construction of a statute. It stated that the first step,
 
 
 23
 "always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."
 
 
 24
 The Court went on to state that, if the statute is silent or ambiguous, then and only then the question becomes "whether the agency's answer is based on a permissible construction of the statute." Id. at 843.
 
 
 25
 The intent of Congress with regard to the statute at issue in the instant case is clear. Looking first at the language of the statute, Heckler v. Turner, 470 U.S. 184, 193 (1985), we find that the language of OBRA, referring to "all necessary steps" and "any ... underpayment" (emphasis added), is completely unrestrictive and unlimited. There is no indication that Congress meant to make an exception for those who no longer were recipients of public assistance. As stated recently by the Ninth Circuit in a case involving claims very similar to those in the instant case, " 'All' means every. 'Any' means without restriction or limitation. The plain meaning of the statute could not be broader. Congress intended all underpayments to be corrected." Edwards v. McMahon, 834 F.2d 796, 799 (9 Cir.1987).
 
 
 26
 The language of the statute provides a further indication that Congress did not intend to limit correction of underpayments only to current recipients of aid. Describing the permissible methods of correcting payment errors, the statute differentiates between current and former recipients regarding recovery of overpayments, but it makes no such distinction when discussing correction of underpayments. Congress thereby demonstrated its intent to require that corrective payments be made to all underpaid recipients, regardless of their current eligibility for aid. Furthermore, as the Ninth Circuit recognized, "in enacting section 602(a)(22), Congress sought to ensure administrative accuracy.... Allowing underpayments to go uncorrected undermines [that] goal...." Edwards, supra, 834 F.2d at 801. We therefore find no basis to deny corrective payments to former AFDC recipients.
 
 
 27
 In short, we affirm substantially for the reasons set forth in Judge Telesca's excellent district court opinion.
 
 
 28
 Affirmed.